118 N.J. Super. 557 (1972)
289 A.2d 270
DEREK THOMAS AKRIDGE AND THE BRONZE SHIELDS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
ANTHONY BARRES, CHIEF OF POLICE, CITY OF NEWARK, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 29, 1972.
*558 Mr. John C. Love for plaintiffs.
Mr. Althear A. Lester, Deputy Corporation Counsel, for defendant (Mr. William H. Walls, Corporation Counsel, attorney).
HERBERT, J.S.C.
Plaintiff Akridge is a Newark policeman. He challenges the validity of Special Order No. 71-15 which was issued by defendant chief of police on March 23, 1971 and which purports to set standards of appearance for policemen by regulating hairstyles on head and face. According to the complaint, The Bronze Shields, Inc. has joined as a plaintiff on behalf of policemen who are its members, but the only specific grievance alleged is the impact of the order upon plaintiff Akridge. Special Order No. 71-15 is as follows:

POLICE DEPARTMENT NEWARK, NEW JERSEY
 PUB 3-1
 March 23, 1971
 SPECIAL ORDER FROM THE CHIEF OF POLICE NO. 71-15
 TO: ALL COMMANDS
 FROM: CHIEF OF POLICE
 SUBJECT: STANDARDS OF APPEARANCE 
 HAIR STYLE  FACIAL HAIR GROWTHS

1. PURPOSE

The purpose of this order is to set standards of appearance for hair styles and facial hair growths worn by Police Officers. The tolerances set forth represent a reconciliation between the current acceptance of fuller and longer male hair styling and the need for establishing clearly defined limits within which our Department can maintain its uniformed identity.

2. REQUIREMENT

The standards as defined are a compilation of recommendations made by Divisional Commanders after consultation with subordinates at all functional levels. The tenets of this order are binding on all Police Officers except when their assignments or duties permit a departure from the requirements. However, any departure must be approved by the Divisional Commander.

*559 3. STANDARDS

Effective this date, all male Police Officers shall regulate their hair style and facial hair growths to conform with the standards for on duty appearance as listed in this section.
a. Hair

(1) The style shall be of medium length and fullness.
(2) The duck tail length is prohibited.
(3) Bushy hair protruding from the sides or back of the head, when a hat is worn, is prohibited.
(4) A neat pattern on the rear of the neck shall be maintained. The growth must be neatly trimmed near the collar line and shall not extend over a shirt or coat collar.
b. Sideburns

(1) The length shall not extend beyond the tip of the ear lobe.
(2) The width shall not exceed 1 1/4-inch at the broadest point.
(3) The growth shall not be more than 1/4-inch in depth.
c. Mustache

(1) The pattern shall be neatly trimmed.
(2) The extent of growth shall be limited to 1/2-inch below the line of the corner of the mouth.
(3) The thickness shall be 1/4-inch in depth and not appear bushy.
(4) The ends may not be waxed or twisted.
d. Full Beards  Goatees

Full beards, goatees or other growths of hair below the lower lip, on the chin, or lower jaw bone area are prohibited.
e. Clean Shaven

Except for the areas of facial growth permitted by this order, all members shall be clean shaven.

4. RULES AND REGULATIONS

This order supplements the Rules and Regulations concerned with members' personal appearance. Any conflict shall be resolved in favor of the standards set by this order.
 /s/ Anthony Barres 
 ANTHONY BARRES
 CHIEF OF POLICE
AB:TWM:jh
The order was issued after a series of meetings at which its subject matter was discussed. Plaintiff Akridge participated *560 in some of the discussions. The contract of January 1, 1971, making Local No. 3 of the Patrolmen's Benevolent Association the exclusive representative of all patrolmen for collective negotiations, requires an opportunity for discussion before rules and regulations are put into effect, and the meetings in question were obviously held to comply with that requirement. The question of new regulations came up because a number of men were complaining that the existing (and stricter) rules were not suitable for the times.
The complaint in the present case was filed on April 27, 1971. It alleged that plaintiff Akridge had been advised he would be suspended on that date unless he had his hair trimmed to comply with the order. Preliminary relief was applied for but denied on the ground that Akridge should exhaust his administrative remedies before suing for an injunction. On May 10, 1971, Akridge was given a hearing before the Police Director on the charges which had been filed against him. Those charges go into considerable detail but can be described in a general way as alleging the following conflicts with Special Order No. 71-15: Akridge has sideburns which are too long, too wide and too bushy; has a mustache which extends more than 1/2" below the corners of his mouth; has a goatee, and has refused to obey commands that he bring his appearance into conformity with the provisions of Special Order No. 71-15. The result of the hearing before the Police Director was a finding that Akridge was guilty of the charges made against him. He was fined five days' pay and given the option of working off the fine.
Since the adverse decision of the Police Director plaintiffs' application for injunctive relief has been renewed. It has been agreed by counsel that the pleadings and affidavits filed in this case, together with the transcript of the hearing before the Police Director, shall be considered as the full record, thus making it possible to treat the case as a summary proceeding under R. 4:67, and reach a final decision.
For defendant it is argued that administrative remedies have not been completely exhausted. By way of answer *561 to that, plaintiffs point to N.J.S.A. 11:2A-1, which by implication rules out Civil Service Commission review of penalties of five days or less. They also cite Perrapato v. Rose, 83 N.J. Super. 245 (App. Div. 1964), in which it was held that a policeman who had been suspended for five days was entitled to have the legality of the suspension reviewed by the courts without first going to the Civil Service Commission. By a proceeding in lieu of prerogative writs he succeeded in having the suspension held unlawful and set aside. It appears that the present case might have been brought in the Law Division as a proceeding in lieu of prerogative writs. However, no motion for transfer has been made and it will be economical of time and effort to decide it here.
Akridge has not complied with Special Order No. 71-15  that is conceded. It may be added that the growth of hair on his face is not in conflict with the order in any extreme or startling way. I have seen him in court and on those occasions he gave the impression of being well groomed.
There have been many cases dealing with orders and regulations to limit hair styles of schoolboys. A note in 84 Harv. L. Rev. 1702 (May 1971) collects and discusses at some length cases of this type. More recently the United States Supreme Court, without any opinion by the majority, denied certiorari in a case from the Ninth Circuit holding a school's regulations concerning length of hair to be enforceable. Mr. Justice Douglas voted to allow the writ and filed a dissenting opinion. Olff v. East Side Union High School District, 404 U.S. ___, 92 S.Ct. 703, 30 L.Ed.2d 736 (1972). In the footnotes to that opinion a great many cases are collected and it is pointed out that in a total of over 50 reported cases which squarely presented the issue the student has won about half. One case listed by Justice Douglas is especially interesting because of its age: Ho Ah Kow v. Nunan, 12 Fed. Cas. p. 252 (C.C.D. Cal. 1879). There an alien Chinese was awarded damages against the Sheriff of San Francisco County under the Civil Rights Act because his queue had been cut *562 off when he commenced serving a five-day jail sentence for a petty offense.
The cited note in the Harvard Law Review points out that courts have had some difficulty in determining what constitutional rights are involved in this area. By way of conclusion, the note writer comments:
In short, whether one proceeds under a first amendment theory or under the more basic principle of a right to determine personal appearance, it would seem that some room for personal choice in this area is dictated by the Constitution. The fact that a right to grow long hair does not rest comfortably in any niche of the Bill of Rights does not mean that any state regulation of student appearance should pass muster. [84 Harv. L. Rev. at 1712]
During the course of the testimony which he gave at the disciplinary hearing before the Police Director, Akridge, having been asked about his reasons for having hair on his face in patterns which conflict with Special Order No. 71-15, said this:
I think that I'm expressing my individual pride as a black man and also it helps me to relate with the people that I'm serving, I mean it is a definite fact since this trouble has come to the notice of the public, it is a definite fact since I've been in that patrol car I've received more support and solid backing from the community to stand on this issue and I've received a lot of support to continue to be a good policeman and I think this issue has proven without the shadow of a doubt in my mind that the community I serve wants me to identify with them as one and this is my inspiration for this whole trial, this whole issue is inspired by the fact that the people want me, as a black policeman, to identify as their fellow man and their fellow brother and I think this is what police work is all about.
Decisions on the regulating of students' hair, although interesting, really have no application here. Discipline, to a degree unknown in schools, is a generally accepted characteristic of a competent municipal police force. McQuillin, Municipal Corporations (3d ed. rev. 1963), § 45.16 at 675, says:
*563 Members of a police force and its responsible officers in many respects constitute a military organization. Discipline must be enforced, and members of the force must surrender individual powers and freedom of action in favor of undivided allegiance to their public duty. As has been seen, reasonable rules and regulations for the government and discipline of the police force may be promulgated and are binding on members of the department.
This section of McQuillin was cited with approval in Newark v. Massey, 93 N.J. Super. 317, 323 (App. Div. 1967).
No reported case has been found in which the growth of hair on the head or face of a policeman was at issue. However, a rule restricting a policeman's freedom to speak has been upheld and enforced. McAuliffe v. Mayor, etc. New Bedford, 155 Mass. 216, 20 N.E. 517 (Sup. Jud. Ct. 1892). In that case a policeman violated a rule of his department by soliciting money to be used for political purposes and by becoming a member of a political committee. Because of the violations he was removed from office. In his suit for reinstatement he argued, among other things, that the rule he had violated was invalid because it invaded his right to express his political opinions. Concerning the claimed invasion of rights, Justice Holmes said for the court:
One answer to this argument, assuming that the statute does not make the mayor the final judge of what cause is sufficient, and that we have a right to consider it [citations], is that there is nothing in the constitution or the statute to prevent the city from attaching obedience to this rule as a condition to the office of policeman, and making it part of the good conduct required. The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman. There are few employments for hire in which the servant does not agree to suspend his constitutional rights of free speech as well as of idleness by the implied terms of his contract. The servant cannot complain, as he takes the employment on the terms which are offered him. On the same principle the city may impose any reasonable condition upon holding offices within its control. This condition seems to us reasonable, if that be a question open to revision here. [29 N.E. at 517]
I can find no basis at all in our statutes or in the reported cases for holding that the city's powers to create and *564 maintain a uniformed police force cannot include the power to regulate the appearance of its policemen by writing rules about their hair. If bizarre styles should be ordered, then presumably the order would be subject to question as an arbitrary action, but we have nothing of the sort here. Special Order No. 71-15 on its face appears reasonable, and more importantly in a legal sense, appears to lie well within the scope of the responsibilities given to those charged with running the Newark Police Department. It is no more for a court, than it is for Akridge, to say that the order should allow sideburns to be a little thicker or mustaches a little longer.
Final judgment will be entered in favor of defendant.