■ In the Matter of DANIEL GREENWALD, Individually and for Others Similarly Situated, Appellant, v. LOUIS J. FRANK, Commissioner of Police of the County of Nassau, et al., Respondents.— In a proceeding pursuant to article 78 of the CPLR (which, upon the parties' stipulation, was treated as an action for a declaratory judgment) to annul and cancel rule 22 of article VIII of the Rules and Regulations of the Nassau County Police Department, petitioner appeals from a judgment of the Supreme Court, Nassau County, entered July 19, 1972, which dismissed the petition. Judgment modified, on the law, by striking therefrom the decretal provision dismissing the petition and substituting therefor a provision adjudging said rule 22 valid. As so modified, judgment affirmed, with costs to respondents. The rationale of the modest regulation in question, concerning personal appearance, setting forth rules as to haircuts, sideburns, mustaches and beards, is that there should be neatness and discipline in a large quasi-military organization such as the Nassau County Police Department so that the general public will have respect for the members of the department. In our opinion this regulation does not raise issues which rise to the dignity of constitutional questions. Latham, Acting P. J., Gulotta, Brennan and Benjamin, JJ., concur; Shapiro, J., dissents and votes to declare the portion of the rule in issue to be unconstitutional, with the following memorandum: In this action for a declaratory

judgment[1] the Special Term found that "the petitioner has not demonstrated that a triable issue exists concerning the relationship of his determining his own personal appearance while in uniform to that of the public interest. Therefore, Louis J. Frank, Commissioner of Police of the County of Nassau, and the Police Department of the County of Nassau are entitled to summary judgment declaring the regulation in its present form valid" (*Matter of Greenwald v. Frank*, 70 Misc 2d 632, 639). In his petition, which was begun by him both in his individual capacity as a member of the Police Department of Nassau County and as president of the Nassau County Patrolmen's Benevolent Association[2] on behalf of all others similarly situated, petitioner alleges that he "desires to have sideburns which are below the bottom of his ear lobe, a moustache which extends over the top of his upper lip and beyond the corners of his mouth, and a beard or goatee" and that the rule adopted by the police department which prohibits him from doing so is an arbitrary, capricious and unreasonable restriction on his personal choice of appearance, interferes with his personal life while off duty and is in violation of his statutory and constitutional rights. That portion of the rule adopted by the police department which is here attacked provides as follows[3]: "Personal Appearance — The provisions of Article VIII, Rule 22 of the rules and regulations pertaining to sideburns shall be adhered to and in no case shall sideburns extend to a point below ¾ of an inch above the bottom of the ear lobe. All provisions relating to moustaches, beards and haircuts shall be strictly conformed with. * * * Moustaches — A short and neatly trimmed moustache may be worn, but shall not extend over the top of the upper lip or beyond the corners of the mouth. Beards, Goatees — Male personnel shall be clean shaven when reporting for duty. Beards or goatees shall not be worn while on duty. A growth of whiskers shall be permitted while on duty for medical reasons only when approved by the Chief Surgeon." Respondents contend that the rules in question are within the power granted the Commissioner, as such, to promulgate regulations governing grooming standards. In opposition to the petition the Commissioner asserts that those accepting appointment as policemen in the Nassau County Police Department agree to abide by its rules and regulations, "which were reasonably enacted for the promotion of order and discipline," and that while petitioner, as a private individual, "might have a constitutionally-protected right to freedom of appearance" — "within prescribed limits", he has no "constitutional right to be a police officer, and to ignore the Rules and Regulations concerning appearance reasonably enacted by the Police Department." The Commissioner also conclusorily contends that the rule "is reasonable and necessary to create a uniform

---

1. The proceeding was originally instituted as one under article 78 of the CPLR, but by the consent of counsel and order of the Special Term it was deemed to be "an action for declaratory judgment" (CPLR 103) and the papers before the court as a motion for summary judgment.

2. The Nassau County Patrolmen's Benevolent Association is the certified bargaining agent for all members of the Nassau County Police Department from patrolmen to detective-captain.

3. The balance of the rule which petitioner does not put into issue reads: "Personal Appearance — Members of the Force and Department shall be neat and clean at all times while on duty. Male personnel shall comply with the following grooming standards unless excluded by their Commanding Officer due to special assignment: Haircuts — Hair shall be neatly cut and trimmed at all times while on duty. Hair styles shall be conservative and not excessive in length."

appearance among police officers of Nassau County and to insure that each officer has a professional appearance, which is essential to engendering public confidence and respect." Special Term determined (1) that a policeman is a public employee with unique characteristics, (2) that therefore his right to determine his personal appearance may be limited and circumscribed, because it is a concern of the police department in the maintenance of discipline, and (3) that a policeman's personal appearance while in uniform has a direct relationship to the public interest, concern and confidence. Special Term, therefore, granted summary judgment declaring the police rules in question valid although the judgment, as entered, instead of so declaring, dismissed the petition (see *Lanza* v. *Wagner*, 11 N Y 2d 317, 334). What is really here involved is the propriety of the reaction by the Commissioner to a major widespread change in custom with respect to men's habits of dress. Carnaby Street and the Beatles have wrought vast changes in the appearance of the American male, a change which, though viewed with alarm by many, has undeniably altered long standing customs of male appearance. Thus the wearing, by men, of hair often longer than that usually worn by women, and flowing moustaches and beards, is now commonplace in our society. As a result, a substantial number of cases involving the right of an individual to determine his personal appearance have come before the courts. The first cases challenging the wearing of long hair by males arose in the schools when educational authorities sought to impose standards of length for hair which barred the Beatle hairdo from the public school classroom (*Zachry* v. *Brown,* 299 F. Supp. 1360; *Breen* v. *Kahl,* 419 F. 2d 1034, cert. den. 398 U. S. 937). While the results varied, what finally emerged from these cases and from other litigation which developed when some public officials sought to impose on their employees similar standards of conformity was a judicial recognition that there is a constitutional right to determine one's own personal appearance and that, therefore, the State bears the burden of establishing substantial justification for any regulation it may impose which limits that right (see *Crews* v. *Cloncs,* 432 F. 2d 1259, 1264; *Richards* v. *Thurston,* 424 F. 2d 1281; *Breen* v. *Kahl, supra; Lindquist* v. *City of Coral Gables,* 323 F. Supp. 1161).[4]

---

4. The most recent decision I am aware of on the subject of the constitutional right of a student to wear his hair long is *Arnold* v. *Carpenter* (459 F. 2d 939), where Circuit Judge Kiley, speaking for the majority, said in a footnote (pp. 941–942) : " The circuits are presently divided 4-4 as to the constitutional right of a student to choose the length of his hair. The First, Fourth, Seventh and Eighth Circuits have recognized the right, although they differ as to its source. In *Breen* v. *Kahl,* 419 F. 2d 1034 (7th Cir. 1969), cert. den. 398 U. S. 937, 90 S. Ct. 1836, 26 L. Ed. 2d 268, this court placed the right as either within the penumbras of the First Amendment freedom of speech, or within the Ninth Amendment rights retained by the people. In *Richards* v. *Thurston,* 424 F. 2d 1281 (1st Cir. 1970), the court designated the right as within the 'liberty' assurance of the Fourteenth Amendment due process clause. In *Bishop* v. *Colaw,* 450 F. 2d 1069 (8th Cir. 1971), the Eighth Circuit identified the right as the 'freedom to govern one's personal appearance' and retained under the Ninth Amendment. Finally, in *Massie* v. *Henry,* 455 F. 2d 779 (4th Cir., decided Feb. 2, 1972), the court referred to the right to wear hair as one wishes as 'an aspect of the right to be secure in one's person guaranteed by the due process clause' but having 'equal protection' overlappings. The Fifth, Sixth, Ninth and Tenth Circuits do not recognize any constitutional right and have upheld regulations limiting the length and style of hair, although their approaches have also differed. The

As Mr. Justice Meyer pointed out in *Matter of Hunt* v. *Board of Fire Comrs. of Massapequa Fire Dist.* (68 Misc 2d 261, 267–269), there are more than 50 hair cases dealing with whether there is a constitutional right to determine one's own hair style and the weight of authority is that this right is to a fundamental liberty for violation or limitation of which the State must establish substantial justification. In that case the court ruled that the respondent fire department showed no factual justification for limiting the length of sideburns and other facial hair worn by members of the fire department and, in doing so, rejected the argument that the fire department was a para-military organization in which it was important to its functioning that discipline and uniformity of appearance be maintained. (See, also, to the same effect, *Lindquist* v. *City of Coral Gables*, 323 F. Supp. 1161, *supra*.) Our problem would be simple were it not for the fact that, despite the weight of authority in the decided cases holding that the State must establish substantial justification for interfering with the right of governmental employees to determine their own hair style, it is also well settled that the courts have consistently refused to apply this test to members of the armed forces, even though they be only part-time members enlisted in the National Guard (*Anderson* v. *Laird*, 437 F. 2d 912, cert. den. 404 U. S. 865; *Gianatasio* v. *Whyte*, 426 F. 2d 908, cert. den. 400 U. S. 941). In the latter case the plaintiff, a member of the National Guard, claimed that his long hair was essential to his regular civilian job, but the court found against him on the ground that it was reluctant to interfere with the discretion of the military in such matters. It was on the rationale

---

most prevalent view among these circuits is that the 'long hair' problem is too insubstantial to warrant federal court consideration. *Stevenson* v. *Board of Education*, 426 F. 2d 1154 (5th Cir. 1970), cert. den. 400 U. S. 957, 91 S. Ct. 355, 27 L. Ed. 2d 265; *King* v. *Saddleback*, 445 F. 2d 932, 940 (9th Cir. 1971); *Freeman* v. *Flake*, 448 F. 2d 258 (10th Cir. 1971). In *Jackson* v. *Dorrier*, 424 F. 2d 213 (6th Cir. 1970), cert. den. 400 U. S. 850, 91 S. Ct. 55, 27 L. Ed. 2d 88, the court held that there was no violation of First, Ninth or Fourteenth Amendment rights and that the 'regulation ha[d] a real and reasonable connection with the successful operation of the educational system and with the maintenance of school discipline.' 424 F. 2d at 218. It is understandable why some judges find students' 'long hair' claims constitutionally insubstantial. Measured against today's great constitutional issues (capital punishment, abortion, school segregation) the question of whether a student may or may not have constitutional protection in selection of his hair dress appears *de minimus*. Perhaps even judges who sustain the right are nagged with impatience and doubt when faced with student claims. But we look down across a gap of a generation or two, from the Olympian heights of what we consider the great issues. For the high school student claimant, however, the right to wear 'long hair' is an issue vital to him and we have seen what he is willing to sacrifice for his claim. It is settled that the students have constitutional rights of freedom and there appears to be no reason why the values of freedom are less precious in a younger generation than in an older. The principle of freedom as the source of our free choices of conduct does not change from generation to generation. Its application on particular facts in student cases is subject to limitation relative to the age, needs and situation of the student and to the reasonable requirements of the common good or state interests. For these reasons it would seem appropriate for the courts to acknowledge the student right as substantial and weigh its exercise in each case with due regard to the freedom and good of the student and to the reasonable needs of the school."

of these decisions involving the military and *Matter of Taxter* v. *Looney* (Supreme Court, Nassau County, Index No. 13898/69, Feb. 6, 1970) and *Dwen* v. *Barry* (336 F. Supp. 487) that Special Term leaned heavily in this case in upholding the propriety of the respondent police department's rules barring sideburns below the ear, long moustaches, and beards. In *Matter of Taxter* v. *Looney* (*supra*) Mr. Justice Levine dismissed a petition attacking such a rule saying in part: " The limited restraint imposed by uniform grooming standards on certain individual members would appear to be entitled to less consideration than the overall benefit to be derived by the appearance of the Department as a whole. Similar regulations have been imposed in other sections of the country. The Court cannot hold that the respondent was arbitrary or that the constitutional rights of the petitioner were violated." In *Dwen* v. *Barry* (336 F. Supp. 487, *supra*), Chief Judge Mishler denied a preliminary injunction against enforcement of a regulation setting grooming standards for members of the Suffolk County Police Department which forbade beards and goatees and sideburns below the lowest part of the exterior ear opening and allowing only short and neatly trimmed moustaches. He said (pp. 487–488) : " Uniformity of dress is part of the discipline of the local police department. It is the visible sign of the presence of the law. How the police officer appears to the public is one factor in effective law enforcement. Regulations involving dress and grooming are better left to the officials who are aware of the local customs and taboos. It would be inappropriate for the court to frame such regulations, absent a clear showing of a violation of a constitutional right." Judge Mishler, citing *Griswold* v. *Connecticut* (381 U. S. 479), recognized that application of the rule to governmental employees not in uniform might well bring the regulation within the prohibitions of the Constitution, but he rejected the plaintiff's attempt to distinguish the police from the military for the purpose of the regulation. Both Chief Judge Mishler and Justice Levine read the law as barring only arbitrary State action rather than as placing on the State a burden of establishing substantial justification for any limitation of the constitutional right to determine one's own hair style. Judge Mishler went even further when he applied the doctrine that the police, like members of the armed services, have limited constitutional rights, a conclusion for which no support is found in current constitutional law. (See *Hunt* v. *Board of Fire Comrs. of Massapequa Fire Dist.,* 68 Misc 2d 261, 264, *supra,* and the cases and law review article there cited.) While it has been held that the uniformed services in municipalities, particularly police and firemen, are either para-military or quasi-military, it has never been held authoritatively that they are so military in nature as to have only limited constitutional rights. Even as long ago as 1888 our Court of Appeals would go no further than to say that " the government of a police force *assimilates* to that required in the control of a military body " (*People ex rel. Masterson* v. *French,* 110 N. Y. 494, 499; italics added). That statement, like the Holmes dictum in *McAuliffe* v. *Mayor & Bd. of Aldermen of New Bedford* (155 Mass. 216, 220) that " petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman ", has been relegated to the dust heap of history (cf. *Garrity* v. *New Jersey,* 385 U. S. 493). In *Garrity* the court said, " We conclude that policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights " (p. 500). That court, too, has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a " right " or a " privilege ". (*Graham* v. *Richardson,* 403 U. S. 365, 375; *Gardner* v. *Broderick,* 392 U. S. 273; *Sanitation Men* v. *Sanitation Comr.,* 392 U. S. 280; *Pickering* v. *Board of Educ.,* 391 U. S. 563; *People* v. *Samuel,* 29 N Y 2d 252.) A para-

military or a "quasi-military" organization is not a military organization and the similarity in the words used cannot be used to justify treating the two as if they are one and the same. A police department deals with civilians and carries out a civilian function. Armies, except for civilian insurrections, deal with armies where unquestioning obedience is a must. While in the armed forces a superior officer's authority might be undermined if his orders were flouted by his subordinates, that fact can hardly serve to justify sustaining orders of superiors in nonmilitary organizations where, without substantial justification, such orders infringe constitutional rights (cf. *Griffin* v. *Tatum*, 300 F. Supp. 60, 63). To accept respondents' contention that a policeman is in the same category as a soldier would justify the adoption of a rule — for the sake of uniformity and for easy recognition — that all police officers have their heads shaved bald — as was once the custom in the United States Marine Corps. I assume that respondents here would not urge that their rule-making power extended that far, but that would be the logical conclusion of their contention that a policeman may be subjected to the same limitation of personal rights as a soldier. Under respondents' rule Abraham Lincoln and Charles Evans Hughes could not have qualified as members of respondents' police force; nor could many of America's finest specimens of physical manhood seen daily on television (baseball, football and basketball players) qualify without first going through a Samson-like shearing; and Theodore Roosevelt might never have become President of the United States had he not before that made his mark, walrus moustache and all, as Police Commissioner of the City of New York from 1895 to 1897. Wearing a uniform has for its purpose the demonstration to the general public that the wearer is a member of a particular group and has the authority which is a concomitant of that membership. It is to the uniform that the public reacts, not to the length of hair of the wearer or to the length and breadth of his sideburns or whether he wears a long moustache, or a goatee or beard. The uniform is what signifies and makes manifest the authority entrusted to the wearer, not the color of skin or of eyes or hair, or the shape of the haircut or the other hirsute adornments the wearer of the uniform displays on his face. It is to the uniform that the members of the public react and should yield respect. Policemen are not Lippizaner stallions. They are human beings doing a vital, necessary and ofttimes unpleasant, even dangerous, job. There is no factual showing in the record why they must be compelled by their superiors to maintain a uniformity of hair style. No proof has been advanced to demonstrate any adverse effect of longer sideburns or moustaches or beards or goatees on their effectiveness as policemen. On the contrary, the enforcement of a rule such as the one here under consideration, which in effect would require the use of a tape measure to determine whether the length of a policeman's sideburns was in fact ¾ of an inch above the lower part of his ear lobe, might seriously undermine the morale of any police force. Hence the State has failed to meet its burden of substantial justification for interfering with petitioner's constitutional right to determine his own appearance.[5] Even if that were not so, there

---

5. While petitioner makes no contention to that effect, since he, himself, may well have no religious motivation for wearing a beard or long sideburns, the fact is that one effect of the rule here under consideration may well be to bar from eligibility for membership on the police force adherents of religions which bar cutting the hair on one's face or require the wearing of a beard by adult male adherents, such as certain Muslim sects (*Matter of Eastern Greyhound Lines Div. of Greyhound Lines* v. *New York State Div. of Human Rights*, 27 N Y 2d 279) and certain other religious sects. It is noteworthy, in this connec-

would still be a factual question left requiring the reversal of the summary judgment obtained by respondents. In my opinion, however, respondents have merely set forth conclusory allegations which are insufficient to raise an issue of fact.[6]   The judgment should be reversed and petitioner's motion should be granted declaring the rule insofar as in issue here to be invalid.   [70 Misc 2d 632.]

---

tion, that the portion of the rule attacked by petitioner dealing with beards and goatees contains an exception permitting a " growth of whiskers   *   *   * while on duty for medical reasons."   If such an exception can be countenanced without endangering " order and discipline " within the department, how can it be argued that the need for order and discipline makes reasonable the action of the police department, an arm of the State, in thus, indirectly, establishing a religious test for public employment as a policeman?   The rule under consideration here, if allowed to stand, could be State action involving religious discrimination in employment in a public service and would therefore be in violation of the First Amendment (*Sherbert* v. *Verner,* 374 U. S. 398, 410), made applicable to the States by the Fourteenth Amendment (*Everson* v. *Board of Educ.,* 330 U. S. 1, 16).   As one Judge, now a member of this court, has pointed out, the test of the State's right to interfere with conduct resulting from the exercise of the right to freedom of religion safeguarded by the First Amendment is that such interference be " a reasonable nondiscriminatory regulation by governmental authority which has as its purpose the promotion of public good and safety" (*Matter of Council* v. *Donovan,* 40 Misc 2d 744, 750 Martuscello, J.). In my view respondents herein have failed utterly to meet this test.   The regulation is discriminatory in impact and nothing other than conclusory statements have been offered to establish the reasonableness of the portion of the regulation attacked or to show that it in any way will promote the public good and safety.

6. It should be explained that the Commissioner's right to require the members of his department to be " neat and clean at all times while on duty " and to require that their " hair style shall be neatly cut and trimmed at all times while on duty " and that their " hair styles shall be conservative and not excessive in length " — as is provided for in that portion of the rule not under attack — gives him all the authority he should reasonably have to supervise the appearance of his personnel.