DEREK THOMAS AKRIDGE AND THE BRONZE SHIELDS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS, v. ANTHONY BARRES, CHIEF OF POLICE, AND THE CITY OF NEWARK, DEFENDANTS-RESPONDENTS.

Argued May 21, 1974—Decided June 26, 1974.

*Mr. Garrett M. Heher* argued the cause for appellants, (*Messrs. Smith, Stratton, Wise & Heher,* attorneys; *Mr. Garrett M. Heher* and *Mr. Frank J. Petrino,* on the brief).

*Mr. Althear A. Lester* argued the cause for respondents, (*Mr. Donald E. King,* attorney).

PER CURIAM. The judgment is affirmed substantially for the reasons expressed by the Appellate Division.

PASHMAN, J. (dissenting). I join in the dissent filed by my colleague Mr. Justice Clifford. I must, however, make it clear that I believe there is a legitimate state interest in the appearance of our police officers. The public must be able to recognize on sight a law enforcement officer in the "uniformed" division. Indeed, the presence of a uniformed officer has been demonstrated to deter criminal activity. I am satisfied that uniformity of dress plays a significant role in the discipline of a police department.

On the other hand, hair grooming and personal appearance are different matters. In my opinion, public officials and employers, both public and private, have grossly over-reacted to different hair styles. There is not a scintilla of evidence to support the position that the camp of "short hairs" possesses a superior aptitude or attitude toward their studies or a greater proficiency at their employment than do their "long hair" counterparts.

It is a gross injustice to determine the merit and character of a person by his appearance alone. Those among us who steadfastly continue to perpetuate such nonsense are reveling in self-delusion. Their inability to cope with changing times is reflected in their intransigence in placing themselves in the position of a sole moral arbiter of what is acceptable and good and what is not.

It appears to me that many governmental superiors and employers are simply exhibiting a distaste for long hair styles and nothing more. Our differences in life-style are as distinct as our differences in religion and politics, and, therefore, we should be able to hold and express such without undue interference.

A governmental employer should bear the onus of justifying the legitimate state interest necessary to establish and sustain a regulation of this nature.

CLIFFORD, J. (dissenting).

It is bromidic to say that times change, but perhaps this is a case where a bromide is in order. [*Bishop v. Colaw*, 450 *F*. 2d 1069, 1078 (8 Cir. 1971) (Aldrich, J. concurring)].

Special Order 71–15 of the Newark Police Department sets "Standards of Appearance" for "hair styles and facial hair growths" worn by municipal police officers.[1] The Chancery Division sustained its validity, finding the Order rea-

---

[1]The regulation is set forth in full in the opinion of the Chancery Division at 118 *N. J. Super.* 557, 558–559 (1972).

sonable on its face and "well within the scope of the responsibilities given to those charged with running the Newark Police Department." 118 *N. J. Super.* 557, 564 (1972). The Appellate Division, in an opinion adopted substantially by this Court today, affirmed. The holding is that the police department, whose members are said to constitute "in many respects * * * a military organization," has a "proper and legitimate interest in the appearance of its members" and that a regulation governing length and style of head and facial hair "does not offend any First Amendment rights." 122 *N. J. Super.* 476, 477–478 (1973).

While I accept the notion that the appearance of police officers may very well be a legitimate matter for the concern of the Department, no legally sufficient justification for Newark's form of restriction on hair style appears in this record — a critical deficiency, in my view, for reasons expressed below. The analogy to a "military organization," resorted to by both courts below and now by the majority. I find inexact and unpersuasive. And surely the constitutional point cannot be disposed of with such easy dispatch.[2]

I would follow the approach of the court in *Dwen v. Barry*, 483 *F.* 2d 1126 (2 Cir. 1973), also a case in which a police officer sought to enjoin a hairstyle rule. The trial court there had resorted to the analogy to the military in sustaining the regulation, observing at the same time that it might well

---

[2] Judicial recognition of a constitutional right to style one's own appearance is found in the first, second, third, fourth, seventh and eighth federal circuits, although there is little agreement as to the source. Different courts have found the right in the First Amendment freedom of speech, the Ninth Amendment rights retained by the people, the equal protection clause of the Fourteenth Amendment, and the due process guarantees of the Fifth and Fourteenth Amendments. Convenient collections of the cases are found in *Dwen v. Barry*, 483 *F.* 2d 1126, 1130 (2 Cir. 1973), in *Bishop v. Colaw, supra,* at 450 *F.* 2d 1071–1075, and in *Greenwald v. Frank*, 40 *A. D.* 2d 717, 337 *N. Y. S.* 2d 225, 228–229 n. 4 (App. Div. 1972) (Shapiro, J. dissenting), aff'd., 32 *N. Y.* 2d 862, 346 *N. Y. S.* 2d 529, 299 N. E. 2d 895 (Ct. App. 1973).

raise constitutional issues of the right to free expression, due process and equal protection if applied to other than uniformed personnel. In reversing, the Circuit Court of Appeals refused to extend to the uniformed civilian service of the police department the "unique judicial deference" accorded to the military. After concluding that the characterization of the police service as a para-military organization is "hardly justified either historically or functionally,"[3] the court proceeded to pose the constitutional question as follows:

> While it has been argued that hair length controversies are much ado about nothing, we think there is a substantial constitutional issue raised by regulation of the plaintiff's hair length. The question is whether the government may interfere with the physical integrity of the individual and require compliance with its standard of personal appearance without demonstrating some legitimate state interest reasonably requiring such restriction on the individual. [483 *F.* 2d at 1130].

Here the only reason offered for the special order is a need for the Department to maintain its uniformed identity or, as expressed by one witness, "to achieve uniformity of ap-

---

[3]The analysis is this: The civilian police force, of recent development, grew from a need to supplement the private citizen's role in keeping the peace. The efficient conduct of its affairs called for an organization with centralized administration and disciplined rank and file, which were practical administrative solutions rather than steps towards creating a military force. The discipline essential to an effective police force is of a clearly different type from that required in the military.

Instant unquestioning obedience has been found essential to a soldier in action and his training and its attendant discipline is designed to develop such obedience. The same type of instant unquestioning obedience is not necessary for an effective police force. Rather it has been suggested that the military model of organization and discipline must not be followed too closely as a policeman unlike a soldier frequently acts individually on his own initiative and not subject to the immediate supervision of his superiors. [*Dwen v. Barry, supra,* at 1129. Citations and footnotes omitted].

pearance;"[4] but nowhere is the need for such uniformity
of hair style justified by reference to a legitimate state in-
terest reasonably related to the regulation. I would have no
difficulty at all were the order demonstrably supported by
safety concerns, see *Manco v. Town of Irvington,* 126 *N. J.
Super.* 148 (App. Div. 1973), aff'd o. b. 64 *N. J.* 142 (1974),
or by substantial considerations of discipline or efficiency.
There may, to be sure, be other legitimate state interests.
But from this record I cannot determine any relationship
between so-called "uniformity of appearance" and any of
these interests, no evidence having been submitted in support
thereof.

What the record does disclose is a stipulation from the
Police Director of the City of Newark that plaintiff Ak-
ridge's performance as a policeman was not in any way
affected by his personal appearance which was concededly in
violation of the order. The trial judge noted in his opinion
that "the growth of hair on [Akridge's] face is not in con-
flict with the order in any extreme or startling way. I have
seen him in court and on those occasions he gave the im-
pression of being well-groomed." 118 *N. J. Super.* at 561.
While the hearing officer and the trial court surely were not
bound by it, there was uncontradicted testimony at the ad-
ministrative hearing, given by two fellow police officers whose

---

[4]Contrary to this assertion the regulation does not, of course, un-
dertake to bring about uniformity or "sameness" of appearance.
Rather, it sets outer limits for hair length, with certain adornments,
*i. e.,* beards, goatees, "duck tails," absolutely prohibited.

Presumably the only way to achieve identity of appearance would
be by way of a requirement that the head be shaved clean, in defer-
ence to those whom nature has denied a natural or unlimited growth,
or by the less drastic alternative that those deprived of hairgrowing
powers wear the same style wig, fashioned to some length to which
the wigless would likewise be obliged to adhere.

And while none of the briefs or opinions herein adverts to the prob-
lem, there lurks in the offing an equal protection argument when a
hair length regulation is sought to be applied, or a waiver therefrom
is granted, to one of the growing numbers of female police officers.
See *Crews v. Cloncs,* 432 *F.* 2d 1259, 1266 (7 Cir. 1970).

credibility was unchallenged, that Akridge was aided by his appearance in his performance of his duties as a policeman in the South District; and Akridge said he felt his appearance helped him "to relate with the people that I'm serving * * *."

While plaintiffs' Verified Complaint is couched in "equal protection" terms,[5] it does charge that the regulation is "arbitrary" and has "no relation to [Akridge's] obligation and duties or performance as a police officer." The allegations are thus sufficient to project a substantive due process issue, which in my view is the ground on which the case turns.[6]

On the record before us the regulation has not been justified. It is not defective or void on its face, but in any future contest as to its validity I would require defendants to sustain the burden of establishing a genuine public need for the Special Order. The order imposing a fine on plaintiff Akridge should be vacated.

---

[5]Paragraph 6 of the Verified Complaint reads as follows:

The requirements of Order 71–15 on their face discriminate against Plaintiff DEREK THOMAS AKRIDGE and black members of the police department since the prohibition against bushy hair and mustaches are [sic] obviously designed to restrict black policemen while the white policemen would seldom, if ever, be charged with having bushy hair. And further, the hair style now predominant in the black community is natural or bushy in appearance whether it appears on the face or on the head. So black police officers are restricted in a way white officers are not.

[6]Again from Dwen:

We may well base the right on the guarantee under the Due Process Clause of personal liberty of "a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints. * * * " Poe v. Ullman, 367 U. S. 497, 543, 81 S. Ct. 1752, 1777, 6 L. E. 2d 989 (1961) (Harlan, J. dissenting). Cf. Roe v. Wade, 410 U. S. 113, 93 S. Ct. 705, 726, 35 L. Ed. 2d 147 (1973) ; Rochin v. California, 342 U. S. 165, 72 S. Ct. 205, 96 L. Ed. 183 (1952). Personal liberty is not composed simply and only of freedoms held to be fundamental but includes the freedom to make and act on less significant personal decisions without arbitrary government interference. Limitation of such a right requires some showing of public need. [483 F. 2d at 1130].

I suppose that a nation bent on turning out robots might insist that every male have a crew cut and every female wear pigtails. But the ideas of "life, liberty, and the pursuit of happiness," expressed in the Declaration of Independence, later found specific definition in the Constitution itself, including of course freedom of expression and a wide zone of privacy.

I had supposed those guarantees permitted idiosyncracies to flourish, especially when they concern the image of one's personality and his philosophy towards government and his fellow men. [*Ferrell v. Dallas Independent School District*, 393 *U. S.* 856, 89 S. Ct. 98, 21 *L. Ed.* 2d 125 (1968) (Douglas, J. dissenting from denial of *certiorari.*)].

I would reverse.

*For affirmance*—Chief Justice HUGHES and Justices HALL, MOUNTAIN and SULLIVAN—4.

*For reversal*—Justices PASHMAN and CLIFFORD—2.