Robert WAGNER and Margaret
Wagner, Plaintiffs,

v.

CITY OF HOLYOKE, et
al., Defendants.

Civil Action No. 98–30170–MAP.

United States District Court,
D. Massachusetts.

June 19, 2000.

Stewart T. Graham, Jr., Hampden, MA, for Plaintiffs.

Harry L. Miles, John J. Green, Jr., John H. Fitz–Gibbon, Green, Miles, Lipton, White & Fitz–Gibbon, Northampton, MA, Michael R. Salvon, Timothy F. Murphy, National Ass'n of Government Employees, Springfield, MA, for Defendants.

Cornelius J. Moriarty, II, Moriarty & Wilson, Holyoke, MA, for Objector.

### MEMORANDUM REGARDING PLAINTIFFS' RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

PONSOR, District Judge.

## I. INTRODUCTION

Before the court is plaintiffs' renewed motion for a temporary restraining order and preliminary injunction, seeking to enjoin the defendants from enforcing, imposing, or maintaining discipline against Robert Wagner based on certain Holyoke Police Department rules and regulations. Plaintiff contends that these rules and regulations are unconstitutional on their face and/or as applied to him.[1] For the reasons stated below, the court will allow the preliminary injunction in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Robert Wagner ("Wagner") has been in the Holyoke Police Department since 1975. He was promoted to Sergeant in 1983 and served as Chief of Police from July 1991 to September 1994, after which he resigned and resumed his duties as Sergeant.

In January 1995, defendant Stephen Donoghue was appointed Chief of Police. Later that year, the Massachusetts Attorney General's ("AG") office and Massachusetts Commission Against Discrimination ("MCAD") began investigating the Holyoke City Police Department for various wrongdoings. At that time, Wagner began cooperating with these investigations.

On March 3, 1997, the police department suspended Wagner for three days without pay for discussing departmental matters with Thomas Vannah of the *Valley Advocate* newspaper. Wagner's actions allegedly violated rules 1.6, 1.24 and 1.26 of the Holyoke Police Department Rules and Regulations.[2] These rules prohibit conduct unbecoming of a police officer (1.6), publicly criticizing the department (1.24), and publicly criticizing other members of the department (1.26).

On the same day, the Department suspended Wagner for an additional five days

---

1. For purposes of this Memorandum, the court will refer to plaintiff Robert Wagner in the singular. Plaintiff's wife, Margaret Wagner, has a claim for loss of consortium.

2. The full text of the relevant rules and regulations is set forth below.

without pay. This suspension was for providing an arrest report, an ostensibly confidential document, to the same *Advocate* reporter. This suspension was based on the same three rules.[3]

On March 4, 1997, the Department suspended Wagner for another five days without pay. This time he allegedly provided data from a confidential internal affairs report to the same *Advocate* reporter. This suspension was based again on rules 1.6, 1.24 and 1.26. In this case, violations of rules 1.95, 1.71, 1.58 and 1.130 were also cited as a basis for the sanctions. The latter rules regulate the release of information to the press (1.95), prohibit making false or misleading statements (1.71), prohibit releasing confidential information about departmental actions or movements (1.58), and prohibit removing departmental records (1.130).[4]

On May 29, 1998, Wagner was suspended for obtaining and discussing publicly a report containing evidence that a Holyoke police officer had physically and verbally abused an arrestee. The grounds for this suspension were rules 1.6, 1.25, 1.30, 1.31, 1.32, and 1.95. Rule 1.25 prohibits officers from holding themselves out as spokespersons for the department, and Rule 1.30 requires officers to treat the Department's official business as confidential. Rules 1.31 and 1.32 prohibit an officer from interfering with another officer's official business and from conducting investigations, not otherwise part of his or her official duties, without permission.

Finally on August 3, 1998, Wagner was suspended for three days for making critical comments about a fellow officer in pleadings before the Massachusetts Labor Relations Commission. This suspension was based rules 1.24, 1.26 and 1.30.

Plaintiffs filed a complaint against the City of Holyoke and others in state court on June 3, 1998, alleging, in part, that defendants violated Robert Wagner's free speech rights under state and federal constitutions. In particular, Wagner alleged that defendants improperly used the Department's rules and regulations to retaliate against him for cooperating with the AG's office and the MCAD in their investigations of wrongdoing by the individual defendants and the Holyoke police department. The complaint, which includes a variety of state tort claims as well,[5] was eventually removed to federal court.

On April 30, 1999, plaintiff moved for a preliminary injunction to enjoin the defendants from enforcing, imposing, or maintaining any discipline based on the above-cited Holyoke Police Department rules and regulations. Plaintiff argued that these regulations were unconstitutional on their face and/or as applied to Wagner.

On May 6, 1999, this court heard argument on the motion. However, at that time the parties agreed to brief the issues further and to return at a later date. Moreover, they agreed to hold in abeyance a pending civil service hearing and certain appeals pending this further briefing.

On May 26, 1999, counsel appeared again before this court to argue plaintiff's motion. At this time counsel agreed to attempt to negotiate revisions to the existing rules and regulations. Once more, counsel agreed to hold in abeyance pending proceedings until these negotiations were complete.

---

**3.** Wagner denies the allegation that he released a confidential arrest report. *See* Plaintiffs' Memorandum in Support, Docket No. 21, Exhibit 1, Plaintiff Wagner's affidavit at 2.

**4.** Wagner denies the allegation that he released confidential internal affairs material. *See* Plaintiffs' Memorandum in Support, Docket No. 21, Exhibit 1, Plaintiff Wagner's affidavit at 2.

**5.** Plaintiff also alleges malicious interference with employment contract, intentional infliction of emotional distress, violation of fair representation by the Union, violation of right to privacy, defamation, and loss of consortium. *See* Plaintiffs' Amended and Supplemental Complaint, Docket No. 31 at 15–20.

On July 21 and July 22, 1999, counsel for defendants and for plaintiff filed their written reports regarding the status of their negotiations. Both counsel indicated that discussions were constructive and that much progress was made towards agreed revisions. Unfortunately, despite best efforts, a final agreement could not be reached.

On August 27, 1999, this court denied plaintiff's motion for preliminary injunction without prejudice. *See* Memorandum and Order, Docket No. 39. The court concluded that "given the somewhat fluid nature of the situation, and the subtle balance between plaintiff's First Amendment rights and defendants' need for appropriate regulations, plaintiff's counsel's suggestion ... [to allow defendants] to make final determinations as to the implementation of the [police department's] new rules and regulations ... is eminently sensible." *Id.* at 3. Hence, the court ordered defendants to proceed promptly in finalizing their new rules and regulations and to report to the court as soon as those rules and regulations were in place or provide a status report. *See id.*

Plaintiff now renews his motion in light of defendants' communication to him and the court that defendants will need one year to adopt and implement the new rules and regulations. *See* letter dated September 29, 1999, Docket No. 41. Plaintiff argues that defendants are delaying the implementation of the new rules to drag out their retaliation against him. Plaintiff asks this court (1) to preliminarily enjoin defendants from using certain regulations as a basis for disciplining him, (2) to order defendants to expunge any disciplinary actions previously imposed pursuant to such regulations, and (3) to declare such regulations unconstitutional on their face and/or as applied to plaintiff.

### III. *STANDARD OF REVIEW*

■ Four criteria govern the decision to grant or deny a preliminary injunction. *Langlois v. Abington Housing Authority,* 207 F.3d 43, 47 (1st Cir.2000). The district court "must consider (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, *i.e.,* the hardship to the nonmovant [defendants] if enjoined as contrasted with the hardship to the movant [plaintiffs] if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir. 1996).

■ In a case such as this one, where the alleged injury is a threat to First Amendment interests, "the finding of irreparable injury is often tied to the likelihood of success on the merits." *Playboy Entertainment Group, Inc. v. United States,* 945 F.Supp. 772, 782 (D.Del.1996), *aff'd,* 520 U.S. 1141, 117 S.Ct. 1309, 137 L.Ed.2d 473 (1997). *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Romero Feliciano v. Torres Gaztambide,* 836 F.2d 1, 4 (1st Cir.1987). The loss of First Amendment freedoms unquestionably constitutes irreparable injury. *See Elrod,* 427 U.S. at 373, 96 S.Ct. 2673 (citing *New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971)). *See also Romero Feliciano,* 836 F.2d at 4. Thus, if it is not likely that plaintiff will succeed on the merits, it is equally unlikely that he will suffer irreparable harm. That is to say, "[c]onstitutional injury cannot occur if there is not a constitutional violation." *Playboy,* 945 F.Supp. at 783. Therefore, the inquiry must begin with plaintiff's likelihood of success on the merits.

### IV. *DISCUSSION*

Plaintiff claims that the Holyoke Police Department rules and regulations, used as a basis for disciplining him, violate his First Amendment right to free speech. He argues that he is likely to succeed on the merits under one or both of two theories. First, he argues that some of the

rules, specifically rules 1.6, 1.24, 1.26, 1.30, 1.58, and 1.95, are unconstitutional on their face as overly broad or vague. Second, he argues that these and the remaining rules used to discipline him are also unconstitutional as applied to him under the standard set forth in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

■ Because the record at this time is insufficient for an analysis of the *Pickering* elements, the court will address only the merits of plaintiff's facial challenge. Under *Pickering*, the court must proceed in four steps. *See O'Connor v. Steeves*, 994 F.2d 905, 911 (1st Cir.1993); *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir.1989). First, the court must consider whether the employee was speaking "as a citizen upon matters of public concern." *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Second, if the speech was a matter of public concern, the court must "balance the strength of the employee's First Amendment interest, and any parallel public interest in the information . . ., against the strength of the countervailing governmental interest in promoting efficient performance." *O'Connor*, 994 F.2d at 912. Third, if the court finds the balance tips toward the employee's First Amendment interests, "the plaintiff-employee must show that the protected expression was a substantial or motivating factor in the adverse employment decision." *Id.* at 913. Fourth, if the plaintiff meets that test, "the defendant governmental entity must be afforded an opportunity to show 'by a preponderance of the evidence that [it] would have reached the same decision . . . even in the absence of the protected conduct.'" *Id.* (quoting *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

On the present record, the second, third, and forth steps involve too many factual determinations to permit the court to make the proper analysis now. As the Court of Appeals has noted, "the [*Picker-ing* ] balancing test . . . exemplifies an inextricable relationship between the evolution of constitutional law and the case-by-case application of specific facts to existing legal rules." *Duffy v. Sarault*, 892 F.2d 139, 143 (1st Cir.1989) (citations omitted).

Moreover, Wagner has denied providing a confidential arrest report or confidential internal affairs documents. These denials present additional factual disputes that need resolution through an evidentiary hearing before a *Pickering* analysis can take place. The court will therefore not consider the merits of plaintiff's "as applied" challenge to the regulations until the record can be more fully developed through further preliminary hearings or a trial on the merits.

As mentioned above, plaintiff Wagner challenges the constitutionality of rules 1.6, 1.24, 1.26, 1.30, 1.58, and 1.95 as facially vague and/or overly broad. The following discussion will center on these rules.

## A. *The Vagueness Doctrine*

■ The Supreme Court has stated that "[t]he root of the vagueness doctrine is a rough idea of fairness." *Colten v. Commonwealth of Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). As a matter of due process, a law is void for vagueness if persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). A statute must provide "fair notice," and give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited . . . ." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). *See also Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1048, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991).

■ In the First Amendment context, the prohibition against a vague statute or regulation is also based on its potential chilling effect on otherwise permissible

speech. If a person must guess at what speech or expressive conduct may run afoul of a regulation or statute, that person may be overly cautious in his or her words and deeds. The danger is that "[t]hose ... sensitive to the perils posed by ... indefinite language, avoid the risk ... only by restricting their conduct to that which is unquestionably safe. Free speech may not be so inhibited." *Baggett v. Bullitt,* 377 U.S. 360, 372, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

■ There are two ways to challenge a regulation or statute as unconstitutionally vague. First, the plaintiff may show that the regulation is vague in all its applications, *i.e.,* it provides no ascertainable standard to give notice of its reach. *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). *See also Parker v. Levy,* 417 U.S. 733, 753–758, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). Under this challenge, a court will find a statute vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates,* 402 U.S. at 614, 91 S.Ct. 1686.

Second, a plaintiff may challenge a regulation as vague as applied to his particular conduct. *See Parker,* 417 U.S. at 757, 94 S.Ct. 2547. In other words, given the language of the rule, the challenger must show that he did not have sufficient warning that his conduct would violate the statute or regulation.

■ Under the vagueness doctrine, a litigant does not have standing to challenge a regulation because it might be vague as applied to *others* not before the court, but not as applied to him. Regardless of its potentially vague application to hypothetical third parties, the litigant may only challenge a rule's vagueness as it applies to him. *See Parker,* 417 U.S. at 756, 94 S.Ct. 2547. Therefore, one whose conduct *clearly* violates a regulation or

statute "may not successfully challenge it for vagueness." *Parker,* 417 U.S. at 756, 94 S.Ct. 2547. *See Broadrick v. Oklahoma,* 413 U.S. 601, 608, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (noting that "even if the outermost boundaries of [the statute] may be imprecise, any such uncertainty has little relevance ... where appellants' conduct falls squarely within the 'hard core' of the statute's proscriptions").

B. *The Overbreadth Doctrine*

■ The First Amendment overbreadth doctrine is concerned with the scope of a rule, *i.e.,* with whether a rule's application extends so far as to prohibit a substantial amount of protected speech. Unlike the vagueness doctrine, however, the First Amendment overbreadth doctrine permits third party standing. Litigants "are permitted to challenge a statute [for overbreadth] not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick,* 413 U.S. at 612, 93 S.Ct. 2908 (1972).

■ "The elements of First Amendment overbreadth analysis are familiar. Only a statute that is *substantially* overbroad may be invalidated on its face." *City of Houston, Texas v. Hill,* 482 U.S. 451, 458, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (emphasis added). "The overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick,* 413 U.S. at 615, 93 S.Ct. 2908. *See also New York v. Ferber,* 458 U.S. 747, 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). "We have never held that a statute should be held invalid on its face merely because it is possible to conceive of a single impermissible application...." *Broadrick,* 413 U.S. at 630, 93 S.Ct. 2908 (Brennan, J., dissenting). Instead, "[i]n a facial challenge to the overbreadth and vagueness of an enactment, a court must

first determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). The requirement that the overbreadth be substantial arose from the Supreme Court's recognition that application of the overbreath doctrine is, "manifestly, strong medicine" to be applied "sparingly and only as a last resort." *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908.

## C. *Application to the Rules*

In light of this overview, the following discussion will turn to the specific rules challenged.

*Rule 1.6: Conduct Unbecoming*

> Officers shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably upon the Department. Conduct unbecoming an officer shall include that which brings the Department into disrepute or reflects discredit upon the officer as a member of the Department, or that which impairs the operation or efficiency of the Department or officer.

Plaintiffs' Memorandum in Support, Docket No. 21, Exhibit 2 at 2–3.

 Wagner argues that this rule is unconstitutionally vague because the phrase "brings the Department into disrepute or reflects discredit upon the officer ... or the Department" lacks any objective criteria. He argues that this language is "functionally equivalent" to language the Seventh Circuit found unconstitutionally vague in *O'Brien v. Town of Caledonia,* 748 F.2d 403, 408 (7th Cir.1984).

In *O'Brien,* the Seventh Circuit allowed a police officer's motion for preliminary injunction enjoining disciplinary proceedings against him for violating provisions in his police department manual. The court found, *inter alia,* that the regulations prohibiting "conduct leading to serious discredit to the Town" were unconstitutionally vague. *Id.* at 407. The court reasoned that the language "lacks objective criteria and can only be subjectively applied." *Id.* at 408.

Unfortunately for the plaintiff, *O'Brien* is trumped by the Supreme Court's decision in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), as construed by the First Circuit in *Brasslett v. Cota,* 761 F.2d 827, 836–839 (1st Cir.1985), and in *Wishart v. McDonald,* 500 F.2d 1110, 1116–1117 (1st Cir.1974). In *Arnett,* the Court upheld a provision of the Lloyd–LaFollette Act, 5 U.S.C. § 7501(a), which authorized removal or suspension without pay of non-probationary federal employees "for such cause as will promote the efficiency of the services," against the charges of both overbreadth and vagueness. *Arnett,* 416 U.S. at 164, 94 S.Ct. 1633. The Court emphasized "the impracticability of greater specificity" and the need for a general removal provision. *Id.* at 162, 94 S.Ct. 1633.

In *Brasslett,* the First Circuit upheld against a vagueness challenge a "catch-all" disciplinary provision, "authorizing the [Town] Manager to impose sanctions in any situation 'of such seriousness that disciplinary action is considered warranted.'" *Brasslett,* 761 F.2d at 837. In *Brasslett,* a fire chief was fired for making certain statements in the local press. The court noted that "strikingly similar" regulations have withstood vagueness challenges in *Arnett* and in the First Circuit's previous decision in *Wishart,* 500 F.2d at 1116–1117.

*Wishart* involved a sixth grade teacher who was dismissed from his job for carrying a mannequin in his yard in a lewd and suggestive manner. The plaintiff sought a declaratory judgment that the phrase "conduct unbecoming of a teacher," which was part of a law used to discharge him, was unconstitutionally vague. *Wishart,* 500 F.2d at 1111. The court held that the vagueness challenge was foreclosed by *Arnett,* and upheld the constitutionality of the phrase. *See id.* at 1116.

Counsel contended at oral argument that *Arnett* is distinguishable because the federal employees there had the benefit of a personnel manual. But, as *Wishart* points out in rejecting this same argument, the manual "added nothing of value to the statutory standard except to give notice of its enormous breadth."[6] *Wishart,* 500 F.2d at 1116.

Even if the rule might be vague as applied to other persons in other contexts, it belies common sense to suppose that this plaintiff was not aware that his conduct fell within the purview of the regulation. Wagner was a former Police Chief of the Department with over twenty years experience as a police officer there. He was certainly on notice, for example, that providing confidential internal affairs information to a reporter (assuming he did this) would constitute conduct unbecoming of a police officer. In other words, the rule provided sufficient notice to Wagner that his conduct put him at risk for discipline pursuant to Rule 1.6. Therefore, he may not challenge it for unconstitutional vagueness as applied to him. *See Parker,* 417 U.S. at 756, 94 S.Ct. 2547. *See also Wishart,* 500 F.2d at 1116.[7]

Since it is unlikely that plaintiff will succeed on the merits of his vagueness challenge to Rule 1.6, it follows that he will not likely experience irreparable harm. As to this rule, the court will deny plaintiff's motion.

*Rule 1.24: Public Disparagement*

Officers shall not publicly criticize or ridicule the Department, its policies, or other officers by speech, writing or other expression, where such speech, writing, or other expression is defamatory,

obscene, unlawful, is intended to undermine the effectiveness of the Department, is insubordinate, or is made with reckless disregard for truth or falsity.

Plaintiffs' Memorandum in Support, Docket No. 21, Exhibit 2 at 4–5.

 This rule, plaintiff argues, is both unconstitutionally vague and overly broad. The rule is vague, according to plaintiff, because the phrase, "is intended to undermine the effectiveness of the Department," and the term "insubordinate" do not refer to any criteria to govern their application. Plaintiff's vagueness challenge fails for the same reasons stated above; substantially similar language was upheld in *Arnett* as applied by subsequent First Circuit case law.

Plaintiff's overbreadth challenge to this rule also fails. As noted, a successful overbreadth challenge must show that the rule substantially affects otherwise permissible speech "judged in relation to the statute's plainly legitimate sweep." *Broadrick,* 413 U.S. at 615, 93 S.Ct. 2908. Here, the rule's prohibition on public criticism of the Department is mainly limited to categories of recognized unprotected speech: defamatory speech, obscene speech, unlawful speech, and speech made with reckless disregard for the truth. Only two phrases potentially chill otherwise permissible speech: where speech is "intended to undermine" Departmental effectiveness and where speech "is insubordinate." With respect to the first, *Arnett* upheld an almost identical phrase against an overbreadth charge. *See Arnett,* 416 U.S. at 164, 94 S.Ct. 1633. With respect to the second, the possibility of impermissible "chilling" of speech is too remote to permit

---

**6.** The Federal Personnel Manual referred to in *Arnett* included the following "specifics": Basically a "cause" for disciplinary adverse action is a recognizable offense against the employer-employee relationship. Causes for adverse action run the gamut of offenses against the employer-employee relationship, including inadequate performance of duties and improper conduct on or off the job . . . .

*Wishart,* 500 F.2d at 1116.

**7.** In *Wishart,* the court also held that the regulation was not unconstitutionally vague as applied to Wishart because his behavior was fairly identifiable by an ordinary person as conduct unbecoming a teacher. *See Wishart,* 500 F.2d at 1116.

a finding of facial invalidity in light of the rule's plainly legitimate sweep. The "strong medicine" concentrated in an overbreadth finding is not appropriate here.

Again, since it is unlikely that plaintiff will succeed on the merits of his constitutional challenge to Rule 1.24, this facet of the motion will be denied.

*Rule 1.26: Criticisms of Other Officers*

A member or an employee of the Department shall not criticize any other member or employee except in the line of duty as a superior to a subordinate, nor shall the member or employee maliciously gossip about any superior, order, policy, procedures, case, or event, nor shall a member or employee cause to discredit, lower, or injure the morale of the personnel of the Department of that of any individual of the Department.

Plaintiffs' Memorandum in Support, Docket No. 21, Exhibit 2 at 5.

 Plaintiff challenges this rule as being unconstitutionally overbroad. The court agrees. Unlike the previous rule, which limits its scope primarily to unprotected speech, Rule 1.26 is so broad as essentially to impose a gag order on all criticism of other officers and employees except in the narrow case of a superior criticizing a subordinate. Moreover, it forbids all criticism of orders, policies, procedures, cases, or events. In other words, the rule prohibits a very substantial amount of otherwise permissible speech.

A similar regulation was held overly broad in *Gasparinetti v. Kerr*, 568 F.2d 311 (3d Cir.1977). In *Gasparinetti*, the court enjoined disciplinary action against a police officer based on five police department regulations. In particular, it found the "Public Disparagement" regulation overly broad. This regulation stated:

Department members shall not publicly disparage or comment unfavorably or disrespectfully on the official action of a superior officer, nor on the Rules, Regulations, Procedures or Orders of the Police Department.

*Id.* at 314. The court concluded that this regulation "essentially prohibits all criticism by police officers of the actions and policies of the Newark Police Department." *Id.* at 318. Moreover, it held that the Department had "no legitimate interest in so broadly regulating its members' speech." *Id.* See also *Pierson v. Gondles*, 693 F.Supp. 408, 415 (E.D.Va.1988) (holding regulation stating "employees shall not publicly criticize other officers or office operations" overly broad); *Haurilak v. Kelley*, 425 F.Supp. 626, 629 (D.Conn.1977) (finding similarly worded regulation overly broad); *Flynn v. Giarrusso*, 321 F.Supp. 1295, 1298 (E.D.La.1971) (same).

Here, since plaintiff is likely to succeed on the merits of his facial challenge to Rule 1.26, he will suffer irreparable harm if the request for an injunction is denied.

The remaining criteria for issuance of a preliminary injunction—the balance of prejudice and the effect on the public interest—weigh in plaintiff's favor. The hardship to plaintiff absent an injunction outweighs the hardship to defendants caused by issuance of the injunction. Without a court order the department will continue to discipline plaintiff and deter otherwise permissible speech. On the other hand, issuance of the injunction will require defendants only to refrain from disciplining Wagner based on Rule 1.26 until a final resolution of this case is reached on the merits.

Finally, the public has a strong interest in the type of speech that would be deterred if the injunction were denied. The Supreme Court has held that "[t]he dissemination of information relating to alleged governmental misconduct" is "'speech which has traditionally been recognized as lying at the core of the First Amendment.'" *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1034, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) (quoting *Butterworth v. Smith*, 494 U.S. 624, 632, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990)). Moreover, "[p]ublic awareness and criti-

cism have even greater importance where ... they concern allegations of police corruption." *Id.* at 1035, 111 S.Ct. 2720.

For these reasons, the court will allow the preliminary injunction with respect to Rule 1.26.

### Rule 1.30: Confidentiality of Official Business

Officers shall treat the official business of the Department as confidential. Information regarding official business shall be disseminated only to those for whom it is intended, in accordance with established departmental procedures. Officers shall not divulge the identity of persons giving confidential information except as authorized by proper authority.

Plaintiffs' Memorandum in Support, Docket No. 21, Exhibit 2 at 6.

▪ Plaintiff argues that this rule is both unconstitutionally vague and overly broad. He contends that the terms "official" and "confidential" are sufficiently indeterminate as to leave officers guessing at to their meaning "in the context of police department functioning." *Id.* at 12.

The vagueness challenge will not work, because plaintiff's alleged conduct, if true, would fall obviously and squarely within the purview of its provisions. Wagner was disciplined for allegedly revealing an arrest report and internal affairs information to a journalist. Both pieces of information are undoubtedly official business and confidential. Any officer with his history and experience would not have had to guess whether these actions were covered by Rule 1.30. Thus, if the allegations are true, he does not have standing to challenge this rule for unconstitutional vagueness.

With respect to Wagner's overbreadth challenge, he claims that a similar rule was found overly broad in *Flynn*, 321 F.Supp. at 1299. There, the court found the following New Orleans Police Department regulation overly broad.

Public statements—A member shall not publicly publish, or cause or allow to be published, his statement concerning official business or law enforcement policy without the prior approval of the Superintendent.

*Id.* Aside from its overbreadth, the *Flynn* court also found the rule invalid as a prior restraint. *See id.* at n. 6.

*Flynn*, of course, is not controlling; because of its distinguishable facts, it is not persuasive either. In *Flynn*, a New Orleans Police Department rule prohibited a member from making public "*his* statement concerning official business." *Id.* at 1299. (emphasis added). It essentially gagged officers completely. Rule 1.30 prohibits "information regarding official business" from being made public; it is limited to the content of the department's confidential records and official business. It does not on its face close the door to any unapproved personal expression.

In sum, since it is unlikely that plaintiff will succeed on the merits of his constitutional challenge to Rule 1.30, this facet of the motion will be denied.

### Rule 1.58: Confidentiality of Actions and Orders

No member of the Department shall make known any proposed action or movement of the Department, or the contents of any order, other than to persons immediately concerned with its execution.

Plaintiffs' Memorandum in Support, Docket No. 21, Exhibit 2 at 8.

▪ Plaintiff argues that this rule is both unconstitutionally vague and overly broad because a functionally equivalent rule was condemned in *Flynn*, 321 F.Supp. at 1300–1301. There the court found that the terms "official" and "confidential" were too vague to provide adequate standards, and the blanket prohibition against revealing departmental conduct and functions was so broad that it inhibited officers from exposing incompetent and corrupt activities. *Id.*

With respect to this vagueness challenge, plaintiff does not have standing. As before, his alleged conduct was clearly within the core meaning of the rule. This rule was used as a basis for disciplining plaintiff for allegedly providing data from a confidential internal affairs report to a reporter for the *Advocate*. If the allegation is correct, the rule provides sufficient notice to an officer, especially a former Chief of Police, that such behavior is prohibited.

Plaintiff's overbreadth challenge also fails. Again, plaintiff relies on *Flynn*, which found overly broad the following regulation:

> Security of Operations—The operations of the Department shall be conducted in a confidential manner. A member shall not impart to any person the content of any official instruction, policy, or record, or the conduct of departmental functions; except in performance of duty as directed by a superior officer, or under due process of law.

*Flynn*, 321 F.Supp. at 1300.

Rule 1.58 is different from the Louisiana rule in *Flynn*. That rule was substantially more general and sweeping; it prohibited the release of *any* official instruction, policy, record, or conduct past, present or future. *Cf. Barrett v. Thomas*, 649 F.2d 1193 (5th Cir.1981) (finding overly broad police department regulation prohibiting gossip and release of confidential information).[8] Rule 1.58, however, is limited to future conduct *vis a vis* "proposed actions" or the "content of any order." While the *Flynn* rule might deter officers from exposing departmental incompetence, corruption, or other improprieties when they knew of them, Rule 1.58's scope would not have this effect. To the extent that Rule 1.58 is overly broad, its excessive reach is not substantial. A restriction on divulging

"proposed" departmental actions, movements, or orders will not significantly chill protected speech.

Since plaintiff is not likely to succeed on the merits of his constitutional challenge to Rule 1.58, the court will deny this portion of plaintiff's motion.

*Rule 1.95: Releasing Information to the Media*

> The Department encourages the full release of information to the news media, except where the particular details of a crime or incident should be withheld so as not to hamper an investigation. Only the Chief of Police or his designee may release information relative to questions of enforcement policy; disciplinary action against a member of the department; organizational changes; policy statements; annual reports or crime statistics; answers to criticism against the department; "mug" shots. No "off the record" statements are to be made by any members of this department, nor shall requests of the press to "hold back" or not to publish information [be] given to them.

Plaintiffs' Memorandum in Support, Docket No. 21, Exhibit 2 at 12.

 Plaintiff contends that this rule is overly broad. He argues that it "is a complete restriction on police officers from discussing with the media anything relating to the police department, under any circumstances." Plaintiffs' Memorandum in Support, Docket No. 21 at 14. Plaintiff cites *Grady v. Blair*, 529 F.Supp. 370, 371–72 (N.D.Ill.1981), where the district judge struck down a rule regulating the Chicago Fire Department that prohibited members from releasing "any information pertaining to Departmental policy and operations while on duty" before clearing it with its Office of Public Information. *Id.* There the court held that such a rule essentially

---

8. The regulation stated in pertinent part:
No member of the department shall make known any information concerning the progress of an investigation, a known or reported law violation, or condition against

which action is to be taken, at a future time, or any proposed Sheriff operation of any type, to any person not authorized to receive it.
*Barrett*, 649 F.2d at 1193 n. 1.

prohibited all criticism of the department by its employees.

Likewise, Rule 1.95 is overly broad. By allowing only the Chief of Police or his designee to release information regarding policy, discipline, organizational changes, and criticisms, the rule prohibits a substantial amount of otherwise permissible speech. *See Barrett,* 649 F.2d at 1196 n. 1 (finding overly broad a police regulation prohibiting officers from making "any statement or remark to any member of the news media that is or could be of a controversial nature").

The court therefore finds that plaintiff will likely succeed on the merits on his facial challenge of Rule 1.95. The court also finds that the balance of prejudice favors plaintiff and that allowing the injunction better serves the public interest, given the importance of the information that might be withheld if the injunction were denied.

## V. *CONCLUSION*

For the reasons given above, the court finds that the City of Holyoke's Police Department's Rules and Regulations 1.26 and 1.95 are facially unconstitutional. Plaintiff's motion for a preliminary injunction with respect to these two rules will therefore be allowed. The court will enjoin defendants from enforcing these regulations against Robert Wagner, and will give defendants ninety days to enact substitute regulations that pass constitutional muster, or face prohibition of the existing regulations without a replacement.

The court will not order defendants to expunge disciplinary actions previously imposed based on these two regulations at this time. The relevant disciplinary actions were based, in part, on other rules not found to be invalid.[9]

The court does not suggest with this ruling that the rules and regulations could

not be better written and revised. It understands that the department is currently in the process of revising its rules and regulations, and encourages this initiative. Substantial clarification would be helpful even with regard to those regulations that do clear the constitutional hurdle.

A separate order will issue.

### *ORDER*

For the reasons stated in the accompanying Memorandum, Plaintiffs' Renewed Motion for Preliminary Injunction (Docket No. 43) is ALLOWED in part and DENIED in part. The injunction is ALLOWED with respect to rules 1.26, and 1.95. Defendants are hereby enjoined from enforcing the rules against plaintiff Robert Wagner. Beginning September 18, 2000 these two regulations will be void and unenforceable against any member of the Holyoke Police Department unless before that date they are revised appropriately. The injunction is DENIED with respect to rules 1.6, 1.24, 1.25, 1.30 1.31, 1.32, 1.58, 1.71 and 1.130.

---

9. For example, the Department's order dated March 3, 1997 includes the following rules as its basis for disciplining Wagner: 1.6, 1.24 and 1.26. Since the court will only enjoin the use of rule 1.26, for now the department continues to have a basis for disciplining Wagner. A similar situation exists for each of the discipline orders that are the subject of this case.